IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RACHEL M CAUDLE                                                                                    PLAINTIFF

V.                                           NO. 13-5312

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Rachel M. Caudle, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.     Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on October 15, 2010, alleging an inability to work since October 15, 2010, due to "Overweight diabetics knees feet ankles swelling," diabetes, knee pain and feet swelling. (Tr. 282, 291, 303, 307). An administrative hearing was held on April 9, 2012, at which Plaintiff appeared with counsel, and she and her daughter testified. (Tr. 180-211).

By written decision dated September 13, 2012, the ALJ found that during the relevant

-1-

time period, Plaintiff had an impairment or combination of impairments that were severe - early cartilage degeneration in her knees and obesity. (Tr. 13). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 16). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). (Tr. 16). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would be able to perform her past relevant work as a cashier and clerk. (Tr. 22).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional evidence and denied that request on November 4, 2013. (Tr. 1-6). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 13, 15).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.   Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnard, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnard, 314 F.

3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the

national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

## III. Discussion:

Plaintiff raises the following issues in this matter: 1) The ALJ erred in finding Plaintiff's mental impairment to be non-severe: 2) The ALJ erred in finding Plaintiff's other physical impairments to be non- severe; 3) The ALJ erred in his RFC determination; and 4) The ALJ erred in his determination that Plaintiff could perform her past relevant work. (Doc. 13).

### A. Severe Impairments:

Plaintiff contends the ALJ erred in rejecting the opinion of Cara R. Hartfield, Ph.D., Licensed Psychologist, who examined Plaintiff on June 22, 2012, and diagnosed her with Major Depressive Episode Single Episode Chronic, Moderate, assigning her a GAF score of 50. (Tr. 636). Dr. Hartfield also opined that Plaintiff's mental impairment interfered markedly with her day to day adaptive functioning. (Tr. 637). Plaintiff therefore argues that the ALJ erred in not finding her depression to be severe.

In his decision, the ALJ found that Plaintiff's mental impairment of mood disorder did not cause more than minimal limitation in her ability to perform basic mental work activities, and evaluated Plaintiff's mental functioning under the special technique enumerated in 20 C.F.R. §§ 404.1520a(a), 916.920(a). (Tr. 14). The ALJ also addressed Dr. Hartfield's evaluation at length, and found that it was not supported by the consultative examination, Plaintiff's statements and testimony, or the objective medical evidence of record. (Tr. 15-16). The ALJ

discussed Plaintiff's daily activities, as well as the fact that there was no evidence that Plaintiff had ever received any mental health treatment or referral for specialized psychiatric care. (Tr. 16).

The Court first notes that Plaintiff did not allege any mental impairment in her disability application documents, which is significant. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001). Next, in Plaintiff's Function Report, she indicated that she watched her grandchildren during the day while her daughter and son-in-law worked, that she made complete meals most of the time, carried small loads of laundry to the washer, swept the floors four times a month, mopped four times a month, walked, drove and rode in the car, and shopped for groceries, gifts, and clothes in stores whenever needed. (Tr. 350-353). In a later Disability Report-Appeal, dated April 23, 2011, Plaintiff reported that she could care for her personal needs, but was unable to do the things she used to do. (Tr. 363).

Plaintiff first complained of depression to her treating physician, Dr. Leslie Stone, on April 19, 2012, and again on May 29, 2012, reporting that she had struggled with it "off and on" for about three years. (Tr. 69, 75). Soon thereafter, Plaintiff was evaluated by Dr. Hartfield. Dr. Hartfield reported that Plaintiff lost her job in February 2010 and had felt depressed and unmotivated since then. (Tr. 631). She noted that Plaintiff had no history of psychological treatment and had no history of mental health hospitalizations. (Tr. 632). Dr. Hartfield reported that Plaintiff's depression appeared to be related to losing her job. (Tr. 636). Although Dr. Hartfield opined that Plaintiff's mental impairments interfered markedly with her day to day adaptive functioning, she also found that Plaintiff's capacity to communicate and interact in a socially adequate manner was unaffected; that Plaintiff's capacity to communicate in an

intelligible and effective manner was moderately affected; that Plaintiff's capacity to cope with typical mental/cognitive demands of basic work-like tasks was moderately affected; that Plaintiff's ability to attend and sustain concentration on basic tasks was mildly affected; that Plaintiff's capacity to sustain persistence in completing tasks was moderately affected; and that Plaintiff's capacity to complete work-like tasks within an acceptable time frame was mildly affected. (Tr. 637).

The ALJ analyzed Dr. Hartfield's evaluation carefully. (Tr. 16). He reasoned that Plaintiff's treating physicians were in a position to recognize whether Plaintiff was in need of more than bodily care, and that they made no referrals for specialized psychiatric care. (Tr. 16). He additionally noted that prior to her loss of job in 2010, Plaintiff had held that job for six years. (Tr. 16). It is also noteworthy that Plaintiff indicated that the reason she was terminated from her job as a CNA in 2010 was because she took a man that she was caring for to her home. (Tr. 633). The ALJ assigned Dr. Hartsfield's opinion no weight and found Plaintiff's depression did not have more than a *de minimis* effect on the claimant's ability to perform basic work activities, and was therefore non-severe. (Tr. 16).

Plaintiff also argues that the ALJ erred by failing to evaluate and determine to be severe her impairments of bilateral lower extremity edema, left rotator cuff tendinitis and bilateral shoulder impairment, incontinence, vertigo, diabetes mellitus, and migraine headaches.

The Court first notes that Plaintiff was diagnosed with obesity, and throughout the period of time she was being treated by her treating physicians, Plaintiff was told she needed to lose weight and change her lifestyle and eating habits, not only for her pain but also to help control her diabetes. (Tr. 34, 36-37, 39, 40, 42, 45, 48, 87, 90, 114, 124, 128, 395). Plaintiff was

routinely non-compliant with this advice. "Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004)(citations omitted). Plaintiff admitted she needed to lose weight, but stated that she liked few vegetables, ate a lot of meat, and exercised little because of knee pain. (Tr. 128). She was told by Dr. Stone on October 19, 2010, to walk 30 minutes three days a week. (Tr. 128). However, on November 22, 2010, Plaintiff reported she was only exercising 15 minutes, about three times. (Tr. 118). Plaintiff again reported on October 26, 2010, that she knew she needed to change her eating and exercise habits. (Tr. 124). On December 7, 2010, Plaintiff reported to Dr. Stone that she had decreased her Pepsi intake from four 20 oz. bottles a day to one or two a day. (Tr. 114). Dr. Stone reported that Plaintiff was probably not exercising or adhering to a food plan, and Plaintiff was to keep a food diary for a week. (Tr. 1140.

On December 16, 2010, a Physical RFC Assessment was completed by non-examining consultant, Dr. David L. Hicks. (Tr. 438-445). Dr. Hicks concluded that Plaintiff was capable of performing light work with certain additional limitations. (Tr. 445). On November 28, 2011, Plaintiff was again reported by Dr. Stone as not exercising adequately. (Tr. 87). On January 4, 2011, when Plaintiff presented to Dr. Stone, complaining of knee pain in both knees, Plaintiff was offered steroid injections, but declined. (Tr. 112). On February 23, 2011, Plaintiff presented to Dr. Stone complaining of migraine headaches, and indicated she had gone to the emergency room the day before and was given a shot that completely resolved the headache. (Tr. 110). On August 19, 2011, Dr. Stone reported that Plaintiff stated that her migraine headaches were less severe since starting amitriptyline. (Tr. 92). On September 18, 2011, when Plaintiff presented

to Siloam Springs Memorial Hospital complaining of a headache, she reported she took Elavil, which usually helped, but she ran out. (Tr. 554). On September 27, 2011, Plaintiff again reported that her migraine headaches had improved significantly since she was placed on amitriptyline. (Tr. 90).

On January 23, 2012, Plaintiff complained to Dr. Stone that she had previously been to the emergency room for a migraine headache, and that although the amitriptyline had decreased the frequency of her headaches, she still had one once a month and ended up in the emergency room. (Tr. 82). She indicated that several years prior, she had been on imitrex, which seemed to help. (Tr. 82). The record reflects that Plaintiff's migraine headaches could be resolved with treatment.

On April 7, 2012, Plaintiff had a seizure and was taken to the hospital. (Tr. 693). A CT scan of the brain was unremarkable. (Tr. 694). On April 26, 2012, Plaintiff reported to Dr. Stone that she had been seizure free without medications for twenty years, and that she had no further seizures since she started Dilantin on April 7, 2012. (Tr. 72).

On February 5, 2013, Plaintiff reported to Dr. Stone that she had recently acquired an exercise bicycle, which she had started using about every 2 days, for 5-10 minutes. (Tr. 56). On April 23, 2013, Plaintiff reported that in addition to using the exercise bicycle, she was doing exercises prescribed by a physical therapist and was walking. (Tr. 48). She also reported that Tramadol was helping her back pain. (Tr. 38). When she presented to Siloam Springs Memorial Hospital on April 25, 2013, with knee pain, her range of motion was within normal limits and she was diagnosed with osteoarthritis pain. (Tr. 163).

On May 3, 2012, Plaintiff underwent a physical examination by Dr. Gary P. Nunn. (Tr.

-8-

615). Plaintiff was found to have full range of motion of her neck on lateral bending and twisting, her extremities were without clubbing cyanosis or edema, and she had 130 degrees of abduction of the upper extremities bilaterally and 70 degrees of thoracolumbar flexion, and 10 degrees of extension and later flexion. (Tr. 616). X-rays of both of her knees showed no bony or soft tissue defects, and she had 5/5 motor on flexion and extension in the upper as well as the lower extremities bilaterally. (Tr. 616). In his Medical Source Statement of Ability to Do Work-Related Activities (Physical) of the same date, Dr. Nunn concluded that Plaintiff would be able to perform light work with certain additional limitations, such as: she could frequently reach, handle, finger, feel, and push/pull with both hands; frequently operate foot controls with both feet; could occasionally climb stairs and ramps, ladders or scaffolds, balance, stoop, kneel, crouch, and crawl; and could occasionally tolerate exposure to everything except she could frequently tolerate loud noise. (Tr. 618-621).

On May 9, 2013, Plaintiff reported that her exercising was "so-so." (Tr. 45). By June 6, 2013, Plaintiff reported that she was not exercising more, due to her back pain. (Tr. 42).

On July 2, 2013, Plaintiff told Dr. Stone that she had not been working very hard at either exercise or the food plan. (Tr. 39). On July 30, 2013, Plaintiff indicated that she had been exercising "some," but did not think she could "ever give up cooking with butter and margarine," and had not been working very hard at either exercise or the food plan. (Tr. 36). It was reported that it was doubtful that Plaintiff would have long-term success in weight loss. (Tr. 37). On August 27, 2013, Plaintiff admitted that she was not actively engaging in weight loss efforts. (Tr. 34).

At Step Two of the sequential analysis, the ALJ is required to determine whether a

claimant's impairments are severe. See 20 C.F.R. § 404.1520(c). To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security Ruling 96-3p. The Step Two requirement is only a threshold test so the claimant's burden is minimal and does not require a showing that the impairment is disabling in nature. See Brown v. Yuckert, 482 U.S. 137, 153-54 (1987). The claimant, however, has the burden of proof of showing he suffers from a medically-severe impairment at Step Two. See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000).

The ALJ clearly considered all of Plaintiff's impairments during the relevant time period, including the impairments that were found to be non-severe. See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir.2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012); see also 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe' ").

A review of the record reveals that the impact of Plaintiff's other alleged physical impairments as well as Plaintiff's alleged mental impairment did not rise to the level of greater than *de minimis* and had no more than a minimal effect on Plaintiff's ability to do work-related activities. In any event, the ALJ assessed Plaintiff's RFC based on all alleged impairments, and any error that might have been made in failing to identify a severe impairment was harmless. Accordingly, based upon the foregoing, as well as those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's determination of severe

impairments.

### B.     RFC Determination:

Plaintiff argues that the ALJ's determination of light work is internally inconsistent because the ALJ gave great weight to the findings of consultative examiner Gary Nunn, M.D., who examined Plaintiff on May 3, 2012, and completed a physical RFC assessment in which he opined that Plaintiff had the capacity to perform light work with additional limitations.   The ALJ's RFC did not include the additional limitations.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel,  245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

As noted by Defendant, although the ALJ did not assess any additional limitations in his RFC, the record shows that Plaintiff: could ambulate without the need of assistive devices; had a normal gait; exhibited intact neurological, sensory, motor, and psychiatric functioning; and had

full range of motion in the neck, back and all extremities. (Tr. 463, 477, 479, 545, 559, 576, 596, 616, 695, 706). Additionally, x-ray examination of Plaintiff's knees revealed no bony or soft tissue abnormality. (Tr. 616). Plaintiff's daily activities also support the ALJ's finding that Plaintiff could perform a full range of light work.

In his decision, the ALJ considered the opinions of Dr. Gary Nunn, who examined Plaintiff on May 3, 2012. (Tr. 20, 615). In Dr. Nunn's Medical Source Statement of Ability to Do Work-Related Activities (Physical), Dr. Nunn found that Plaintiff was capable of performing light work, except she could frequently reach, handle, finger, feel, and push/pull with both hands; could frequently operate foot controls with both feet; could occasionally climb stairs and ramps, ladders or scaffolds, balance, stoop, kneel, crouch, and crawl; and could occasionally tolerate exposure to all of the conditions except could frequently tolerate loud noise. (Tr. 617-621). In his decision, the ALJ found Dr. Nunn's opinion was supported by the objective medical evidence of record, the May 17, 2012 X-rays, Plaintiff's statements and testimony, and his examination of the Plaintiff. (Tr. 20). Therefore, the ALJ stated that he incorporated Dr. Nunn's limitations into the Plaintiff's RFC as assessed. Although the ALJ failed to incorporate Dr. Nunn's additional limitations in his RFC assessment, said omission is harmless error, because the position of cashier II satisfies the requirements of the additional limitations. Accordingly, the Court finds there is substantial evidence to support the ALJ's RFC determination.

### C. Past Relevant Work:

Plaintiff argues that the record is "murky" with respect to when Plaintiff performed her past relevant work as cashier and clerk. The Court disagrees. Plaintiff admitted at the hearing that she worked as a cashier and deli worker in 1998 and 1999. (Tr. 185). In her Disability

-12-

Report - Adult, dated November 10, 2010, Plaintiff reported that she worked as a cook-cashier at a restaurant-convenience store in 1995 and as a cashier and temporary employee at a convenience store in 1996. (Tr. 308). She also reported that she worked as a cashier in 1998 and 2003, a deli employee in 1999 and 2000-2001. (Tr. 308).  Plaintiff's argument on this issue is without merit.

Plaintiff also argues that the ALJ did not inquire into the exertional and non-exertional demands of her past work before determining she could perform the past work.  At the hearing, the ALJ asked the VE to classify Plaintiff's past relevant work.  With respect to the cashier check, the VE testified as follows:

> A: ...As a cashier checker, DOT code 211.462-014, which is described by the Dictionary of Occupational Titles as light and semi-skilled with an SVP of three, and as convenient store clerk, DOT code 211.462-010, which is described by the Dictionary of Occupational Titles as light and unskilled with an SVP of two.

(Tr. 186).

As noted by Defendant, the VE classified Plaintiff's past work according to the DOT job descriptions, gave the DOT and Specific Vocational Preparation (SVP) number for each job, and indicated the exertional and skill level required for each job. The ALJ may rely on the VE's information with respect to the demands of Plaintiff's past relevant work or her ability to perform her past relevant work. See Wagner v. Astrue, 499 F.3d 842, 852 (8th Cir. 2007)(ALJ may rely on VE's testimony at step four).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's decision that Plaintiff could perform her past relevant work.

**E.     Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In this case, the ALJ considered Plaintiff's daily activities, finding that Plaintiff had mild limitation in this area. (Tr. 14). He also considered the medical records as well as Plaintiff's subjective complaints. Although the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he also found that Plaintiff's statement concerning the intensity, persistence and limiting effects of the symptoms were not credible to a certain extent. (Tr. 18). The ALJ reported that Plaintiff was able to perform her activities of daily living, which was hindered only by her lack of motivation, rather than by incapacitating limitations stemming from her impairments. (Tr. 19). He noted that Plaintiff watched her grandchildren, cleaned, shopped, cooked, and tended to her personal hygiene with little assistance. (Tr. 19). He also noted that Plaintiff failed to follow up on recommendations made by her treating physician, and that Plaintiff did not stop working because of her alleged disabling impairments. (Tr. 19).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's credibility findings.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 24th day of April, 2015.

*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)